**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 7** |
| | ) | |
| **NATIONSLINE NEW JERSEY, INC.,** | ) | **Case No. 08-71014** |
| | ) | |
| **Debtor.** | ) | |

| | | |
|---|---|---|
| | ) | |
| **LYNN L. TAVENNER, TRUSTEE,** | ) | **Adversary Proceeding No. 10-07037** |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Motion to Dismiss** |
| | ) | |
| **LTA MANAGEMENT, INC., and** | ) | |
| **NORMAN D. MASON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM DECISION

### INTRODUCTION

This adversary proceeding has been filed by the Debtor's Trustee in Bankruptcy to recover excessive compensation which she claims the Debtor paid to an affiliate company, LTA Management, Inc. ("LTA"), alleged to be owned by the Debtor's president, Norman D. Mason ("Mason"), his wife, and another insider of the Debtor, for management and accounting services which it purportedly provided to the Debtor. In addition to targeting LTA, the Trustee also seeks to recover from Mason the allegedly excessive amounts paid and to disallow, or failing that, to subordinate, two claims which he filed in the case against the bankruptcy estate. The Defendants have filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), which is made applicable to bankruptcy adversary proceedings by Bankruptcy Rule 7012. For the reasons which follow, the Court will partially grant that Motion and partially deny

it.  As to those counts where the Motion is granted, however, in accordance with the Trustee's

express request, the Court will allow her the opportunity to file an amended complaint.

### SUMMARY OF COMPLAINT'S FACTUAL ALLEGATIONS

According to the Trustee's Complaint, the Debtor, NationsLine New Jersey, Inc.

("NationsLine"), was formed on March 1, 2004, with Defendant Mason as its majority

shareholder, director, and president.  (Compl. ¶8.)  The stated purpose of the corporation was to

construct a telecommunications network in New Jersey to provide local and long distance

telephone service.  *Id.*  At about the same time as the formation of NationsLine, Mason formed

Defendant LTA, which was owned by Mason, his wife, and an unspecified insider of

NationsLine.  (Compl. ¶ 9.)  Both LTA and Mason are alleged upon information and belief to be

residents of Virginia. (Compl. ¶ 3.)  Mason took an active role in the operations of both LTA and

NationsLine.  (Compl. ¶ 14.)  LTA provided management, bookkeeping, and accounting services

to NationsLine, which had no employees of its own, in return for a management fee.  (Compl. ¶

9–10.)

NationsLine filed a voluntary petition under Chapter 11 of the Bankruptcy Code

on June 3, 2008.  (Compl. ¶ 1.)  NationsLine, as debtor-in-possession, retained possession of its

property and was authorized to continue the operation and management of its business.  *Id.*  The

case was later converted to a Chapter 7 case and Lynn L. Tavenner was appointed as Chapter 7

Trustee on October 17, 2008.  *Id.*

The Trustee asserts that, upon her appointment, she found that NationsLine's

records and the documents it has filed in the case are inconsistent with regard to the method for

determining the management fee owed and the actual amounts paid to LTA.  The Trustee

2

requested a copy or explanation of the terms of the agreement between LTA and NationsLine for the provision of management and other services, but nothing was ever produced.  (Compl. ¶ 9.) The books and records that were turned over to the Trustee are inconsistent with regard to the method of calculating LTA's fee.  (Compl. ¶ 15.)   She alleges that the Debtor's records, the pleadings, and prior testimony in the case show the cash revenue method, accrued revenue method, line count, and estimates were used with no consistency.  *Id.*  The Statement of Financial Affairs, which was signed by Mason and filed by NationsLine with its petition for relief, stated that $3,900 was paid to LTA in the year preceding the petition.  (Compl. ¶ 11.) However, the Debtor's books and records reflect much higher amounts paid, with more than $550,000 paid in 2007 and in excess of $1,100,000 paid in 2006.  (Compl. ¶ 15.)  The Trustee has specifically identified twelve transfers occurring within a year of the petition date totaling $432,129.65 and seven transfers occurring the previous year totaling $273,982.45.  (Compl. ¶ 16–17.)  In addition, after the petition date, NationsLine is alleged to have transferred property of the estate to LTA in an amount of at least $15,000.  (Compl. ¶ 18.)  Finally, Mason filed a post-petition request for administrative payment of fees due for management services in the amount of $72,962.58 on behalf of LTA.  (Compl. ¶ 14.)  NationsLine's books and records do not support the amount of this claim, and it was withdrawn after the Trustee objected.  *Id.*

The Trustee also calls attention to several claims that were filed in the bankruptcy case.  The first is a claim filed by the trustee of an affiliated debtor, CAT Communications International, Inc., in the amount of $500,000, to which the Trustee notes that she has not objected.  (Compl. ¶20.)  The Trustee alleges that the claim relates to a complaint filed by Verizon New Jersey, Inc. ("Verizon") on December 6, 2005, against NationsLine, CAT

Communications, and certain of their common principals, including Mason, in the United States

District Court for the District of New Jersey. (Compl. ¶ 19.) The complaint contained

allegations of fraud, fraudulent transfers, and conspiracy. *Id.* The litigation has not proceeded

since the petition date. *Id.* The other claims mentioned in the Complaint are two filed by Mason

in which he states, under penalty of perjury, that NationsLine owes him $611,194.00 for a note

and $1.00 for indemnification. (Compl. ¶ 12–13.) The claim based upon the note does not

specify a date for the note and contains no other supporting documentation, NationsLine's

ledgers do not reflect the indebtedness, and NationsLine's schedules, which were signed by

Mason, do not reflect any debt to Mason. (Compl. ¶ 12.) The only supporting documentation

attached to the claim for indemnification is a copy of NationsLine's bylaws. (Compl. ¶13.)

PARTIES' LEGAL CONTENTIONS

The Trustee has brought this adversary proceeding to challenge the transfers to

LTA and the claims filed by Mason. The first seven counts of the Complaint assert causes of

action under Bankruptcy law, counts eight through twelve assert Virginia state law causes of

action, and counts thirteen and fourteen challenge the proofs of claim filed by defendant Mason.

LTA and Mason have filed a Motion to Dismiss, challenging the sufficiency of the facts pled in

the Complaint and asserting that some of the state law causes of action are not recognized by

applicable Virginia law.

Count I seeks to have the property transferred to LTA both pre- and post-petition

turned over to the estate and to force LTA to account for all of the property of the Debtor it has

used pursuant to 11 U.S.C. § 542. Count II seeks to have the transfers made within two years of

the petition date avoided as both actual and constructive fraudulent transfers under 11 U.S.C. §

4

548.  Count III seeks to avoid the transfers as voluntary conveyances under Virginia law

pursuant to 11 U.S.C. § 544 and Va. Code Ann. § 55-81.  Count IV alleges that the transfers

were actual fraudulent transfers and seeks to avoid them under Virginia law pursuant to 11

U.S.C. § 544 and Va. Code Ann. § 55-80.  Count V seeks to avoid the transfers as preferences

under 11 U.S.C. § 547.  Count VI seeks to avoid all post-petition transfers pursuant to 11 U.S.C.

§ 549.  Count VII seeks recovery of the property transferred in the event that any of the transfers

are avoided pursuant to 11 U.S.C. § 550.

The Motion to Dismiss challenges these counts on the ground that the Trustee has

failed to allege sufficient facts to make her claims plausible as required by the Supreme Court's

decisions in *Twombly v. Bell Atl. Corp.*, 550 U.S. 540, 127 S.Ct. 1955 (2007), and *Ashcroft v.*

*Iqbal*, --- U.S. ----, 129 S. Ct. 1937 (2009).  With regard to Count V, Defendants argue first that

the Trustee has failed to allege facts to support her contention that the transfer was for or on

account of an antecedent debt.  Specifically, they argue that the Trustee has failed to allege the

nature and amount of the antecedent debt and that the facts which are alleged suggest that the

transfers were contemporaneous exchanges for value and therefore not avoidable under § 547(c).

The Trustee, on the other hand, argues that she has alleged the existence of an antecedent debt

and, because the Defendants have been thwarting her access to information, a more liberal

pleading standard should apply to her Complaint.  Specifically, she argues that she should not be

forced to identify the nature and amount of each antecedent debt.

Defendants next argue that the Trustee has failed to allege facts supporting her

allegations that the Debtor was insolvent at the time the transfers were made, which would be

required for avoiding the transfers as constructive fraudulent transfers in Counts II and III and as

5

preferential transfers in Count IV.  They argue that the allegations are mere conclusions

unsupported by facts indicating the Debtor's insolvency outside the ninety day presumption

period.  In response, the Trustee argues that this Court should adopt the position that pleading

insolvency is a pleading of fact, not a conclusion.  In addition, the Trustee points to her

allegations that the Debtor had creditors both before or within a reasonable time after the

transfers and the allegations concerning the New Jersey litigation to argue that she has alleged

sufficient facts to make it plausible to infer that the Debtor was insolvent.

       Defendants also challenge the Trustee's Complaint on the ground that it does not

contain facts to support her allegation that the transfers allowed LTA to receive more than it

would have under a chapter 7 liquidation, which is an element of the preferential transfer claim

in Count V.  The Trustee argues that she alleged the Debtor was insolvent, which means that the

Debtor could not pay all of its unsecured creditors the full balance of their claims.  By receiving

any payment, therefore, LTA received more than it would have received in a chapter 7 case.

       Next, Defendants challenge the sufficiency of the Trustee's pleading in the

fraudulent transfer counts.  With regard to the constructive fraud allegations, they argue that the

Trustee has failed to meet the requisite pleading standard by not identifying the consideration

received by each transferor, why the value of such consideration was less than the amount

transferred, and facts supporting Debtor's insolvency.  As for actual fraud, they argue that the

Trustee has failed to plead the cause of action with the particularity required by Fed. R. Civ. P.

9(b) and has simply cited the elements of the cause of action without supporting facts.  The

Trustee argues that the Court should review her pleading with greater liberality because she is a

third party with no inside information about the fraud.  For the constructive fraud allegations, she

6

argues that she has alleged sufficient facts to indicate that no consideration was received.

Specifically, she argues that the allegations of the amounts of the transfers, the discrepancy

between the Debtor's Statement of Financial Affairs and records, and the four different methods

used to determine the amount of the fee indicate that the consideration was inadequate.  With

regard to actual fraud, she argues that the factual allegations in her Complaint are indicative of a

number of "badges" of fraud.  Specifically, she states that she has pled that the Debtor was

insolvent and received inadequate consideration in return for the transfers, both of which are

regarded as badges of fraud.  In addition, she points to the allegations that Mason was the

controlling shareholder, director, and president of the Debtor, the inconsistency between the

Statement of Financial Affairs and the books and records of the Debtor concerning the amounts

paid to LTA, her inability to obtain a copy of the contract between LTA and the Debtor, and the

claims filed by Mason.  These allegations of control and deceptive conduct are sufficient, the

Trustee argues, to find actual intent to hinder, delay, and defraud one's creditors.  Finally, the

Trustee argues that her allegations concerning the New Jersey litigation are sufficient to illustrate

that the Debtor was being pursued by creditors, which is another badge of fraud.

   Defendants' final challenge to the first seven counts is that the Trustee has failed

to support her allegation, in Count III, that the transfers challenged under Va. Code Ann. § 55-81

were not supported by consideration deemed valuable in law.  They argue that Virginia regards

any valuable consideration received by the transferor as sufficient to support a transfer and

defeat a claim under § 55-81.  Because the Trustee has alleged that LTA provided bookkeeping

and accounting services to the Debtor and that the transfers were paid to LTA in exchange for

services rendered, Defendants argue that the Trustee cannot plausibly argue that the transfers

were made for no consideration.  In addition, they argue that the Trustee must allege that she

represents creditors seeking to avoid the transfers that were creditors at the time of the transfers

to make out a claim under § 55-81 and that she has failed to allege that any of the Debtor's

creditors at the time of the transfers continue to be creditors now.  The Trustee responds by

arguing that her allegation that there is no discernible business relationship between LTA and

Debtor is sufficient to support the allegation that the transfers were not supported by

consideration.  In addition, since she has not been provided with the contract between LTA and

NationsLine, she has not been provided with information that anything of value was given by the

Defendants.  Finally, she argues that the existence of creditors is supported by her allegations

concerning the New Jersey litigation.

Count VIII alleges that Mason breached his fiduciary duty to NationsLine by not

acting in the corporation's best interests.  The example of such behavior the Trustee cites in the

count is that "Mason allowed the Transfers to be made to the insider LTA to the detriment of the

Debtor's unsecured creditors."  Defendants argue that this count is insufficiently pled.  They note

that the Trustee does not identify any specific act attributable to Mason but simply imputes a

fiduciary duty to Mason on the basis of his status as an officer and alleges a breach of that duty

because of the transfers.  Because there is no allegation of action taken by Mason other than the

transfers, they contend, the Trustee is attempting to pierce the corporate veil without the showing

of extraordinary circumstances required under Virginia law.  The Trustee responds by arguing

that the count is properly pled.  Specifically, the Trustee points out that she alleged that Mason

owed a duty to the Debtor because he is a shareholder, officer, and director; that he breached that

duty by making the transfers to LTA; and that the Debtor was harmed by the transfers.  She

8

argues that the Motion to Dismiss only disputes the Defendants' guilt and does not present a valid argument for dismissal.

Count IX, titled "Aiding and Abetting" alleges that Mason aided and abetted the Debtor in implementing the transfers and that LTA aided and abetted Mason in breaching his fiduciary duties by offering substantial assistance in effectuating the transfers with knowledge of Mason's duties. Defendants argue that this count should be dismissed as to Mason because Virginia has not recognized the existence of an aiding and abetting claim and that imposing liability on a shareholder, director, or officer on this ground simply for holding the position when the fraudulent transfers occurred would pierce the corporate veil without the required showing of extraordinary circumstances. With regard to the portion of the count pertaining to LTA, the Defendants argue it should be dismissed because, in addition to the reasons for dismissing the claim against Mason, the Trustee has failed to allege that aid passed between two legally distinct individuals. Specifically, the Defendants argue that a corporation can only act through its agents, so a corporation legally cannot aid and abet one of its officers and directors. Finally, the Defendants argue the portion of the count against LTA should be dismissed because the Complaint does not allege that LTA undertook any specific act other than receiving the money that aided Mason in breaching his fiduciary duties. In response, the Trustee argues that the Bankruptcy Court for the Eastern District of Virginia recognized the existence of aiding and abetting a breach of fiduciary duty as a viable claim in *Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 174 (Bankr. E.D. Va. 2007). The Trustee also asserts that she has pled the required parties and illegal actions, so the Complaint cannot be dismissed at this stage.

9

Count X alleges that LTA breached the management agreement with the Debtor by accepting more money than it was obligated to pay.  The Defendants argue that this count should be dismissed because the Trustee has not alleged the terms of the contract that were breached.

Count XI alleges two alternative causes of action against LTA.  First, it alleges that LTA converted the funds transferred to it.  Next, the Trustee asserts that, under the money had and received cause of action, the money transferred to LTA should be returned to the Debtor.  The Defendants argue that the count is insufficiently pled.  Specifically, they argue that the count should be dismissed because the Trustee has not alleged why LTA's possession of the funds is wrongful.  In fact, the Defendants argue that the Trustee has actually set forth facts to show that the funds belonged to LTA.  The Trustee argues in response that she has alleged that the transfers constitute the wrongful exercise of authority over the Debtor's property, so the elements of the cause of action for conversion have been alleged.

In Count XII, the Trustee alleges that the transfers constituted corporate waste committed by both Defendants.  Specifically, the Trustee asserts that each of the Defendants owed the Debtor fiduciary duties and that the transfers were so one-sided that no business person of ordinary, sound judgment could conclude that the Debtor received adequate consideration. The Defendants argue that Virginia does not recognize corporate waste as an independent tort. In addition, they argue that the allegations in the Complaint are entirely covered under the other causes of action.  Even if the cause of action is recognized, the Defendants assert that the Trustee has not pled sufficient facts to show why the transfers were one-sided or why LTA owes NationsLine fiduciary duties.  In response, the Trustee admits that no Virginia court has yet

10

recognized corporate waste as an independent tort, but says that it was recognized as a possible

cause of action similar to a breach of fiduciary duty in *Schnelling*.  She therefore argues that the

Complaint should not be dismissed on this ground.

   In Counts XIII and XIV, the Trustee objects to the claims filed by Mason and

seeks equitable subordination of the claims if they are not disallowed.  While the Defendants'

Motion asks for the entire Complaint to be dismissed, the accompanying memorandum does not

detail any reasons why these counts should not move forward.

CONCLUSIONS OF LAW

   This Court has jurisdiction over this proceeding by virtue of provisions of 28

U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District

Court on July 2, 1984.  Allowance or disallowance of claims against the estate, orders to turn

over property of the estate, proceedings to determine, avoid, or recover preferences, and

proceedings to determine, avoid, or recover fraudulent conveyances are all "core" bankruptcy

proceedings by virtue of 11 U.S.C. § 157(b)(2)(B), (E), (F), and (H).  For the purpose of ruling

upon the Motion, it is not necessary for the Court to determine whether any of the other asserted

causes of action are "core" proceedings.

Review of Pleading Standards After *Twombly* and *Iqbal*

   This Court has had occasion recently to review the application of recent Supreme

Court authority with regard to adversary proceedings in bankruptcy cases.  In its 2010 decision

in the adversary proceeding *Barber & Ross Company v. Wachovia Bank National Association*,

this Court noted that its consideration of a motion to dismiss for failure to state a claim upon

11

which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), as made applicable to adversary

proceedings through Fed. R. Bankr. P. 7012(b),

> is informed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 540, 127
> S.Ct. 1955, 1974 (2007) and *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct.
> 1937 (2009), recently applied in this Circuit in *Francis v. Giacomelli*,
> 588 F.3d 186 (4th Cir. 2009) and *Nemet Chevrolet, Ltd. v.
> Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009). As the
> Fourth Circuit stated in *Nemet Chevrolet*, "in evaluating a Rule
> 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true
> and construes these facts in the light most favorable to the plaintiff in
> weighing the legal sufficiency of the complaint." 591 F.3d at 255
> (citing *Iqbal*, 129 S.Ct. at 1951-52 and *Adcock v. Freightliner LLC*,
> 550 F.3d 369, 374 (4th Cir. 2008)). However, as stated in *Iqbal*, "a
> complaint must contain sufficient factual matter, accepted as true, to
> 'state a claim to relief that is plausible on its face.'" *Id. (*citing *Iqbal*,
> 129 S.Ct. at 1940 (quoting *Twombly*, 550 U.S. at 570)). *Iqbal* holds
> that a "claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged," but clarifies that the
> "plausibility standard is not akin to a 'probability requirement,' but
> it asks for more than a sheer possibility that a defendant has acted
> unlawfully." *Id.* at 256 (citing *Iqbal, 129* S.Ct. at 1949 (quoting
> *Twombly*, 550 U.S. at 570)).

*Barber & Ross Co. v. Wachovia Bank Nat'l Assoc. (In re Barber & Ross Co.)*, Ch. 11 Case No.

07-50546, Adv. No. 09-05083, slip op. at 17 (Bankr. W.D. Va. Apr. 5, 2010).

In support of their Motion to Dismiss, the Defendants in this adversary

proceeding strongly rely upon bankruptcy court authority from the Eastern District of North

Carolina, specifically *Angell v. BER Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737 (Bankr.

E.D.N.C. 2009). In *Angell*, the court reviewed the sufficiency of a complaint seeking to avoid

preferential and fraudulent transfers filed by the trustee in the case. 409 B.R. at 744. The trustee

alleged that the corporate debtors transferred funds to another corporation, which then paid the

funds to the defendant transferees. *Id.* With regard to the preference portion of the complaint,

the court, analyzing the complaint for each element of a preference claim, found a number of deficiencies. First, the complaint, which only listed the transfers from the corporate intermediary and did not identify which debtor was the source of the funds, did not allege sufficient facts to indicate that the property transferred was the debtors'. *Id.* at 750–51. It also found that the trustee failed to allege that the payment was for an antecedent debt, stating that "the trustee must assert the nature and amount of the antecedent debt in order to allege a plausible claim for relief." *Id.* at 751 (citing *In re Valley Media*, 288 B.R. 189 (Bankr. D. Del. 2003)). Finally, the court found that the trustee had also failed to allege sufficient facts to indicate the debtor was insolvent, as the complaint only included a conclusory assertion of insolvency. *Id.* at 752.

The *Angell* case also involved allegations of fraudulent transfers. The court denied the motion to dismiss the actual fraudulent transfer count, finding that the assertions that the debtors transferred funds to the intermediary so that their creditors could not attach or garnish the debtors' bank accounts, coupled with the detailed allegations of the dates and amounts of the transfers and names of transferees, were sufficient to satisfy the pleading requirements of Fed. R. Civ. P. 9(b). *Id.* at 756. With regard to the constructive fraudulent transfer count, however, the court found that the complaint was deficient as it failed to include facts which identified the consideration received in exchange for each transfer, explain why such consideration was inadequate, and support the inference that the debtor was insolvent at the time of the transfers. *Id.*

<u>Count I:  Turnover of Estate Property and Accounting under § 542</u>

Section 542 of the Bankruptcy Code states, in relevant part, "an entity . . . in possession . . . of property that the trustee may use, sell, or lease under section 363 . . . shall

deliver to the trustee, and account for, such property or the value of such property." 11 U.S.C. §

542(a). Section 363 provides that the trustee may use, sell, or lease property of the estate. 11

U.S.C. § 363(b)(1). Therefore, a trustee may bring an action under § 542 to compel the holder of

estate property to turn it over and account for it. However, actions under § 542 are inappropriate

to "demand assets whose title is in dispute." *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472

(D.C. Cir. 1991). In addition, to the extent that the property sought to be recovered ended up in

the hands of the transferee as the result of a post-petition transfer, the proper remedy is found in

§ 549, which allows the trustee to avoid unauthorized post-petition transfers. *Deckelbaum v.*

*Cooter, Mangold, Tompert & Chapman, P.L.L.C.*, 275 B.R. 737, 741 (D. Md. 2001); *In re C.W.*

*Mining Co.*, No. 08-20105, 2010 Bankr. LEXIS 407, at *21 (Bankr. D. Utah Feb. 10, 2010); *In*

*re 31-33 Corp.*, 100 B.R. 744, 747–48 (Bankr. E.D. Pa. 1989); *see Vogel v. Russell Transfer, Inc.*

852 F.2d 797, 800 (4th Cir. 1988) ("A trustee's power to avoid transfers of property of the estate

that occur *after* commencement of a bankruptcy case is generally given in section 549.").

   In the instant case, the Trustee seeks to recover funds from LTA that were

transferred to it both pre- and post-petition. To the extent that the property sought was

transferred post-petition, the Trustee should proceed under § 549. The funds that were

transferred prior to the Debtor's petition are not property of the estate and therefore cannot be

subject to turnover under § 542. *See Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 325

B.R. 134, 137 (Bankr. S.D.N.Y. 2005) (holding that § 542 cannot be used to recover property

fraudulently or preferentially transferred because such property does not become property of the

estate under § 541(a)(3) until it has been recovered by the trustee). The Trustee has therefore

failed to state a claim upon which relief can be granted, and the Motion to Dismiss is granted as to Count I.

Count II:  Avoidance of Fraudulent Transfers under § 548

This Count alleges that the transfers were fraudulent within the scope of 11 U.S.C. § 548.  It asserts that they were made "with intent to hinder, delay and/or defraud the [Debtor's] creditors" and that both LTA and Mason "knew of and/or participated in such intentions."  It further alleges that the consideration that the Debtor received in exchange for these transfers was "non-existent, inadequate and/or less than a reasonably equivalent value." Lastly it claims that at the time the transfers were made the Debtor "(a) was insolvent and/or became insolvent as a result thereof, (b) was engaged in a business or was about to engage in a business for which property remaining was unreasonably small capital, and/or (c) intended to incur debts that would be beyond the Debtor's ability to pay as such debt matured."

Section 548 sets forth two kinds of transfers which come within its parameters. Section 548(a)(1)(A) deals with transfers made with actual intent to "hinder, delay, or defraud" one's creditors.  The next sub-section, § 546(a)(1)(B), deals with transfers which might be termed constructively fraudulent because they have the effect of leaving the transferor incapable of paying its existing or contemplated obligations.  Paragraphs thirty and thirty-one of the Complaint set forth the statutory elements of both kinds of transfers.  The Defendants assert that such allegations do little, if anything, beyond that and therefore fall short of the pleading standard enunciated in *Iqbal* and *Twombly*.  The Court partially agrees and partially disagrees with such contention.  It concludes that the allegations that Mason was both the president of the Debtor and the majority owner of LTA and that the other owners were his wife and an insider of

15

the Debtor demonstrate a motivation to favor the interests of LTA over the obligations that the

Debtor owed to its creditors.  Furthermore, the Complaint alleges that "[d]espite repeated

requests" the Trustee has been unable to obtain either a copy of, or a delineation of the terms of,

the agreement furnishing the basis for the management services allegedly provided by LTA to

the Debtor and that the books and records of the Debtor indicate that no consistent method of

calculating compensation for such services was employed.  The Court concludes that these

factual allegations furnish a reasonable and plausible basis for the claim that the transfers were

motivated by a fraudulent intent.  Accordingly, the Court will deny the Motion as to this cause of

action.

There are two general elements of a constructively fraudulent transfer claim

pursuant to § 548(a)(1)(B).  The first of these relates to the consideration received by the

transferor in exchange for the transfer.  The statute requires that the transferor receive "less than

a reasonably equivalent value in exchange" for the challenged transfer.  The Court will treat the

alternative allegation of the total absence of any value received in exchange for the transfers as

surplusage.  It concludes that the factual allegations already noted are adequate to give

plausibility to the claim that the Debtor received less than equivalent value for the transfers

which the Trustee seeks to recover.  The second element of the § 548 statutory test for

constructively fraudulent transfers is an additional requirement that one of four conditions be

met:  (i) that an objectionable transfer render the transferor insolvent or be made when already

insolvent, or (ii) leave the transferor with "unreasonably small capital" for its existing business

or any business or transaction in which it is about to engage, or (iii) the transferor believed or

intended that it would incur debts exceeding its ability to pay them as they matured, or (iv) that it

be made in connection with an employment contract for the benefit of an insider and not in the

ordinary course of business.  The Trustee alleges alternatively the first three of these conditions,

any of which would be adequate.  The Trustee, in paragraph twenty-two in the "Factual

Background" portion of the Complaint, specifically alleges that "[a]t all relevant times herein,

prior to and at the time of the Transfers, the Debtor was unable to pay its debts as they came due

and Mason and LTA were aware of the Debtor's insolvency."  The Court concludes that this

allegation is sufficient to establish that the Trustee's claim that the transfers were made while the

Debtor was insolvent is a plausible one.  The Court believes that there is no pleading

requirement that the Trustee allege the specific obligations which rendered it insolvent within the

meaning of the statute when there are other factual allegations which provide plausibility to that

general claim.  Accordingly, the Court will also deny the Motion as to such claim.

  The Court further concludes that the claims that the Debtor was left with

unreasonably small capital or that its principals intended that the Debtor would incur, or believed

that it would incur, obligations which it would be unable to pay are not supported by sufficient

specific factual allegations.  While the Trustee has alleged that the Debtor was formed for the

purpose of "constructing its own telecommunications network in New Jersey" there are no

supporting allegations concerning the capital needed for such an enterprise, or how much capital

the Debtor had when the transfers occurred or had left after they were effected, or what new

capital investment, if any, was then needed to effectuate its business plans and whether any

alternative sources of funding for such plans had been identified at the time such transfers were

made.  In short, the Court concludes that insufficient facts are alleged beyond the mere recital of

the elements of the cause of action to justify any conclusion other than the Trustee is simply

covering her bases of possible grounds for the cause of action she asserts.  Accordingly, as to these alternative grounds, the Court will grant the Motion.

<u>Count III:  Avoidance of Voluntary Conveyance under Va. Code Ann. § 55-81</u>

Count III sets forth a cause of action pursuant to Va. Code Ann. § 55-81, which the Trustee is entitled to pursue by virtue of 11 U.S.C. § 544(b).  The specific language of § 55-81 is as follows:

> Every gift, conveyance, assignment, transfer, or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made.  Even though it is decreed to be void as to a prior creditor, because voluntary or upon consideration of marriage, it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers.

Of critical importance to the Trustee's claim, the statute is only applicable to transfers which are not "upon consideration deemed valuable in law, or which is upon consideration of marriage." Of course no issue of marriage is presented here and the issue is whether there was any consideration "deemed valuable in law" for the transfers alleged by the Trustee.  While the Trustee alleges in paragraph thirty-four that "the Debtor received no consideration deemed valuable at law in exchange for the Transfers," this must be weighed in light of the overall tenor of the Complaint that the Debtor made transfers to LTA which exceeded the value of the services the latter provided to the Debtor.  Indeed, the Trustee alleges in paragraph ten that "[s]ince the Debtor had no employees at all relevant times, it relied on the insider LTA for bookkeeping and accounting services."   In the preceding paragraph of the Complaint the Trustee also cited

18

without challenge LTA's assertions that it provided "management and other services to the Debtor." In no place in the Complaint does the Trustee allege that LTA did not in fact provide services to the Debtor. Any valuable consideration is sufficient to meet the requirement of consideration "deemed valuable in law." *See Moore v. Manson (In re Springfield Furniture, Inc.)*, 145 B.R. 520, 533 (Bankr. E.D. Va. 1992). A trustee's challenge to transfers made by a corporation to its shareholders in a leveraged buyout under this section was denied because receipt of an investment and management assistance from a parent corporation consituted consideration deemed valuable in law in the case of *C-T of Va., Inc. v. Euroshoe Assocs.*, 762 F. Supp. 675, 678 (W.D. Va. 1991), aff'd, 953 F.2d 637 (4th Cir. 1992). Accordingly, the Court finding no factual allegations to support a contention that the Debtor received no consideration deemed valuable in law from LTA in exchange for the payments the former made to the latter, the Motion will be granted as to this count.

### Count IV:  Avoidance of Fraudulent Transfers under Va. Code Ann. § 55-80

Count IV sets forth a cause of action pursuant to Va. Code Ann. § 55-80 which the Trustee is entitled to pursue by virtue of 11 U.S.C. § 544(b). The specific language of § 55-80 is as follows:

> Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers, or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

The intent to hinder, delay or defraud creditors is the same as that required by § 548 of the

Bankruptcy Code.[1]  Either existing or subsequent creditors can challenge transfers under the

Virginia statute made with the requisite intent.  *See Consolidated Tramway Co. v. Germania*

*Bank,* 121 Va. 331, 335, 93 S.E. 572, 573 (1917).  For the same reasons already set forth in the

discussion of Count II of the Complaint, the Court concludes that the factual allegations

contained in the Complaint, while admittedly rather spare in nature, are adequate to provide a

sense of plausibility to this count as well.  Accordingly, the Motion will be denied as to Count

IV.

<u>Count V:  Avoidance of Preferential Transfers under § 547</u>

Count V seeks to avoid the pre-petition transfers as preferences.  A trustee may

avoid a transfer as a preference if it satisfies each of the elements set forth in 11 U.S.C. § 547(b).

The transfer must be made to or for the benefit of a creditor, on account of an antecedent debt,

while the debtor was insolvent, and within 90 days or, for transfers to insiders of the debtor, one

year of filing, and must allow the creditor to receive more than it would in a hypothetical

liquidation under chapter 7.  *Id*.  The Trustee specifically alleges all of these elements in

paragraphs two through five of Count V.  Nevertheless, the defendants attack this count on a

number of grounds, arguing that the Trustee has failed to allege facts showing the existence of an

antecedent debt, that the Debtor was insolvent when the transfers were made, and that the

transfers allowed LTA to receive more than it would in a chapter 7 case.

---

[1] See discussion of Count II *supra*.

As noted above, the Trustee has pled sufficient facts to give facial plausibility to her claim that the Debtor was insolvent at the time of the transfers.[2]  The Defendants do have valid points, however, in noting that the claims that the transfers were for antecedent debts and allowed LTA to receive more than it would in a chapter 7 liquidation are not supported by any specific factual allegations which would give such claims credence.  The Court will address these claims in turn.

The Trustee alleges generally that the payments were on account of an antecedent debt.  She further alleges that LTA provided management services in exchange for the fees it was paid.  Thus, the Trustee argues, the antecedent debt would be what the Debtor owed for the management services provided by LTA.  The Defendants argue that the facts in the Complaint, specifically the regularity of monthly payments at approximately the same time of the month, suggest that the transfers were contemporaneous exchanges, and therefore not avoidable under § 547(c)(1).  The specific facts alleged are amenable to either possibility.  Because the Trustee alleges that she has never been able to obtain a copy of the management contract, if one exists, or a statement of its terms if it is not in writing, she has been clearly hampered in determining when liability for payment for the management services was incurred and comparing that with the dates the payments were made.  Naturally she wants to protect the estate from losing a possible cause of action under § 547 if it appears after discovery is conducted that payments for services were not made substantially contemporaneously to when they were incurred but tardily in a manner subject to challenge as being preferential.  Under these circumstances the Court concludes that as to this issue, even if the Trustee is unable now to know when the Debtor's

_____

[2] See discussion of Count II *supra*.

21

liability for LTA's management services accrued so that she can allege specific facts supporting

her claim that payments for them were delayed, the ends of justice are better served by allowing

this count to go forward at the pleading stage without prejudice to LTA's right to file a motion

for summary judgment after discovery is completed if the facts so warrant.

It cannot be said, however, that the Trustee has been similarly hampered in

providing facts to support the claim that LTA received more as a result of the transfers than it

would as an unsecured creditor in this chapter 7 case.  Where the alleged preference payment is

to a general unsecured creditor, the Trustee must ultimately prove that the creditor would receive

less than 100% of the challenged payment(s) in a chapter 7 liquidation.  *United Rentals, Inc. v.

Angell*, 592 F.3d 525, (4th Cir. 2010).  She argues that she has done so by alleging that the

Debtor was insolvent at the time of the transfers, which, as defined in § 101(32)(A), means that

its liabilities exceeded its assets.  Because of the Debtor's insolvency at the time of the transfers,

the Trustee argues that it could not pay the full balance of its unsecured debts in a chapter 7 case

and, by receiving any payment on their claims, Defendants received more than they would have

in a chapter 7 liquidation.  Essentially she argues that the reasonable inferences from the fact that

the Debtor is in bankruptcy make it obvious that its unsecured creditors will receive less than

100% of what they are owed.  That such is the case in the vast majority of chapter 7 liquidation

cases cannot be denied, but every now and then creditors do get lucky and get paid in full.  The

claim that the Debtor was insolvent at the time the transfers were made does not necessarily

mean that its creditors will not be paid in its bankruptcy proceeding.  It should be a relatively

simple thing for the Trustee to allege sufficient specific facts to make this claim well supported,

but she hasn't done so in her first effort.  Accordingly, the Court will grant the Motion as to this count.

<u>Count VI:  Avoidance of Post-Petition Transfers</u>

Section 549 of the Bankruptcy Code permits a trustee to avoid transfers of property of the estate that are either unauthorized by the court or Bankruptcy Code or authorized only under § 303(f) or § 542(c) of the Bankruptcy Code.  11 U.S.C. § 549(a).  The Trustee seeks in this count to avoid the post-petition transfers, which the Trustee identifies as consisting of at least $15,000 in estate property.  The Defendants' Motion to Dismiss does not set forth any deficiency applicable to this count, so it is denied as to Count VI.

<u>Count VII:  Recovery under § 550</u>

After the trustee has avoided transfers, 11 U.S.C. § 550 provides a mechanism for the recovery of the property transferred.  The survival of this claim depends upon the survival of the avoidance claims above.  Because at least some of the avoidance counts have survived, this count will also survive the Motion to Dismiss.

<u>Count VIII:  Breach of Fiduciary Duty</u>

Directors and officers owe fiduciary duties to their corporation.  *Giannotti v. Hamway*, 239 Va. 14, 24, 387 S.E.2d 725, 731 (1990).  One such duty is the duty of loyalty, which forbids the fiduciary from acting in the interests of another to the detriment of the corporation's interests.  *Today Homes, Inc. v. Williams*, 272 Va. 462, 471, 634 S.E.2d 737, 743 (2006).  The Trustee alleges that Mason breached this duty by placing his own interests or the interests of affiliates ahead of the interests of the corporation.  Specifically, the Trustee states that Mason "allowed" NationsLine to make the challenged transfers to LTA.  The Defendants

claim that, since the count does not identify any specific act taken by Mason, the Trustee is trying to pierce the corporate veil to impose personal liability for fraudulent transfers without a showing of additional wrongdoing.

Defendants cite *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 360 S.E.2d 828 (1987), to support their claim that accepting the Trustee's count would constitute piercing the corporate veil. In *Cheatle*, a corporation transferred all of its assets and liabilities to a successor corporation except for two promissory notes. 234 Va. at 210, 360 S.E.2d at 829–30. The payee of the notes brought suit against the corporation; the corporation's shareholders, who also served as directors; and the successor corporation, alleging that the transfer was a fraudulent conveyance under Va. Code Ann. § 55-80 and that the individual defendants' conduct constituted grounds for piercing the corporate veil. *Id.* at 211, 360 S.E.2d at 830. The Supreme Court of Virginia, reviewing the trial court's finding that the individual defendants were personally liable, held that the judgment could not have been based on the fraudulent conveyance statute as the statute does not normally contemplate an in personam judgment when a transaction is set aside. *Id.* at 211–12, 360 S.E.2d at 830 (*citing Mills v. Miller Harness Co.*, 229 Va. 155, 158, 326 S.E.2d 665, 667 (1985)). *But see Price v. Hawkins*, 247 Va. 32, 35–36, 439 S.E.2d 382, 384 (1994) (detailing situations where personal liability may be imposed under the fraudulent conveyance statute). The court then held that personal liability could not have been imposed on the shareholders through piercing the corporate veil as the plaintiffs had not met the burden of proof for such relief. *Id.* at 212, 360 S.E.2d at 830.

In this case, the claim against Mason individually is not designed to recover the fraudulent transfers and is not based on his status as a shareholder of the recipient corporation.

24

Instead, the Complaint seeks to hold Mason liable for his alleged breach of fiduciary duties owed

to the Debtor by reason of his status as an officer and director of it.  Thus, if properly pled, this

cause of action is not an attempt to pierce the corporate veil and states a viable claim for relief.

Viewing the Complaint, however, it becomes apparent that the Trustee has not pled sufficient

facts to make her claim to relief plausible.  She simply alleges that Mason allowed the transfers

to be made without alleging that he authorized them, did anything to implement them, or was

even aware of them.  In order to make her claim plausible, the Trustee must allege facts

indicating what Mason did to breach his duty of loyalty.  Because she has not done so, the

Motion is granted as to Count VIII.

<u>Count IX:  Aiding and Abetting</u>

Count IX sets forth a common law action for aiding and abetting against both

Defendants.  As to Mason, the Complaint appears to allege a cause of action for aiding and

abetting the allegedly fraudulent transfers.  With regard to LTA, the Complaint alleges that it

aided and abetted Mason's breach of his fiduciary duty.

It is not clear whether Virginia recognizes an independent tort for aiding and

abetting.  The Virginia Supreme Court declined to decide the question in *Halifax Corp. v.*

*Wachovia Bank*, 268 Va. 641, 659–60, 604 S.E.2d 403, 411–12 (2004).  Some federal and

Virginia trial courts have ruled that such a cause of action is viable under Virginia law.  *See*

*Tysons Toyota v. Global Life Ins. Co.*, No. 93-1359, 1994 U.S. App. LEXIS 36692, at *9 (4th

Cir. Dec. 29, 1994); *In re 1031 Exch. Litig.*, No. 8:09-2054, 2010 U.S. Dist. LEXIS 54933, at

*12 (D.S.C. June 2, 2010) (applying Virginia and California law); *AvalonBay Cmtys., Inc. v.*

*Willden*, No. 1:08-cv-777, 2009 U.S. Dist. LEXIS 69118, at *34 (E.D. Va. Aug. 7, 2009);

25

*Schnelling*, 360 B.R. at 174; *Kieft v. Becker*, 58 Va. Cir. 171, 175 (Va. Cir. Ct. 2002) (Fairfax).

However, in other cases, courts have dismissed such claims. *See Calderon v. Aurora Loan Serv.*,

No. 1:10cv129, 2010 U.S. Dist. LEXIS 55602, at *20–21 (E.D. Va. June 3, 2010) (dismissing a

count for aiding and abetting because the plaintiff could point to "no statute or basis in common

law that would establish a cause of action for aiding and abetting"); *Tysons Toyota, Inc. v.

Commonwealth Life Ins.*, 20 Va. Cir. 399, 400 (Va. Cir. Ct. 1990) (Fairfax) ("A defendant who

aids and abets in the commission of a tort may be jointly liable for that tort, but he is not liable

for a separate tort of aiding and abetting.").

Even assuming that Virginia would recognize an independent cause of action for

aiding and abetting, the Court concludes that the Trustee has failed to state a claim against either

LTA or Mason.  Under the facts presented here, it simply makes little sense to attempt to apply

the concept of "aiding and abetting," which seeks to hold third parties liable for participation in

some wrongful conduct, to the actions of the Defendants.  Here Mason is not some independent

third party, but rather is alleged to be both the president of the transferor and the majority owner

of the transferee. The transfers in question, if indeed they exceeded the value of the services

provided to the Debtor by LTA, did nothing to advance the Debtor's interests, rather they would

be contrary to such interests.  If Mason is not liable for breach of his own duty of loyalty to the

Debtor, it is very difficult to imagine how he could be liable for "aiding and abetting" the Debtor

to make the disputed payments.  Similarly, LTA is not some third party, it is rather the actual

transferee of the purportedly excessive payments.  If it is not liable to the Trustee under the

fraudulent conveyance causes of action, it is not clear how it could be liable for "aiding and

abetting" Mason in breaching his fiduciary duty when the breach of fiduciary duty claim would

26

be based on transfers not ultimately overturned.  Even if LTA was not otherwise affiliated with

the transaction, in order to recover under such a claim, the Trustee would have to plead and

prove that such defendant actually knew that the fiduciary was breaching his or her duty and

actively participated in the breach.  *Halifax*, 268 Va. at 660, 604 S.E.2d at 412; *Patteson v.

Horsley*, 70 Va. (29 Gratt.) 263, (1877) (imposing liability for breach of trust on a third party

because the party had notice of the trustee's breach and the breach was "committed at his

instance and for his benefit").  Apart from receiving the fraudulent transfers, LTA is not alleged

to have done anything to aid Mason in his alleged breach of fiduciary duty.  This falls far short

of the active participation that *Halifax* indicated would be necessary to state a claim for aiding

and abetting a breach of fiduciary duty.  Therefore, the Motion to Dismiss is granted as to Count

IX.

<u>Count X:  Breach of Contract</u>

The elements of an action for breach of contract are "(1) a legally enforceable

obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation;

and (3) injury or damage to the plaintiff caused by the breach of obligation." *Sunrise Continuing

Care, LLC v. Wright*, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009) (quoting *Filak v. George*,

267 Va. 612, 619, 594 S.E.2d 610, 614 (2004)).  In this case, the Trustee has alleged that LTA

breached the Management Agreement between LTA and NationsLine by accepting funds that

NationsLine was not obligated to pay under the agreement.  The Trustee does not allege that

LTA had a contractual duty not to accept sums in excess of those NationsLine was obligated to

pay.  Therefore, the acceptance of such sums cannot be a breach of an obligation under the

contract.  The Trustee has not cited any authority, nor is the Court aware of any, holding that

27

mere acceptance of a higher payment than was due under a contract can constitute a breach of

that contract. As such, the Trustee has not stated a claim for relief based on such acceptance,

and the Motion to Dismiss is granted as to this count.

<u>Count XI:  Conversion and Money Had and Received</u>

Conversion consists of the wrongful exercise of authority or act of dominion over

another person's property inconsistent with the owner's rights. *PGI, Inc. v. Rathe Products, Inc.*,

265 Va. 334, 344, 576 S.E.2d 438, 443 (2003) (quoting *United Leasing Corp. v. Thrift Ins.*

*Corp.*, 247 Va. 299, 305, 440 S.E.2d 902, 905 (1994)).  In the present case, as the Defendants

point out, the Trustee has not alleged why LTA's exercise of authority over the funds transferred

to it was wrongful.  In addition, there is no allegation that the Debtor reserved to itself any right

to the funds transferred to LTA.  Under the facts pled in the Complaint, LTA became the owner

of the funds once they were transferred to it.  Therefore, its exercise of authority over those

funds cannot constitute conversion.

On the other hand, the cause of action for money had and received is an assumpsit

action in which facts and circumstances are shown from which the law will imply a promise to

pay. *Raven Red Ash Coal Co. v. Ball*, 185 Va. 534, 541, 39 S.E.2d 231, 234 (1946).  The

"classic case" giving rise to the action "is one in which the plaintiff pays money to the defendant

in excess of the amount contractually owed or pursuant to an act of fraud, duress, or compulsion

by the defendant and the defendant refuses to refund the money to the plaintiff." *Rivanna Solid*

*Waste Auth. v. Van Der Linde*, 78 Va. Cir. 418, 425 (Va. Cir. Ct. 2009) (City of Charlottesville).

In order to state a valid cause of action, "the Trustee need only allege that the defendants are in

possession of money which in equity and good conscience does not belong to them." *Schnelling*,

360 B.R. at 176.

The Trustee has alleged that the funds were paid to LTA in excess of the

reasonable value of the services rendered and that "LTA is or has been in possession of money

which in equity and good conscience does not belong to it." Specifically, the Trustee has alleged

that the Debtor's Statement of Financial Affairs states that only $3,900 was paid to LTA but in

reality much more was paid. The Trustee has therefore sufficiently pled the money had and

received cause of action. To the extent the count seeks recovery under a conversion claim, the

Motion to Dismiss is granted; otherwise, the Motion to Dismiss is denied.

<u>Count XII:  Corporate Waste</u>

The Trustee alleges that the transfers constituted corporate waste. No Virginia

court has explicitly recognized a common law cause of action for corporate waste, but the

Bankruptcy Court for the Eastern District of Virginia has allowed such a claim against directors

of a corporation to survive a motion to dismiss. *See Schnelling*, 360 B.R. at 175

The Trustee relies on Delaware law in her discussion of the standard applicable to

a claim of corporate waste. An action for waste, as conceived in Delaware, is best understood as

a corollary to the business judgment rule presumption. Under the business judgment rule, a

board is presumed to have "acted on an informed basis, in good faith and in the honest belief that

the action taken was in the best interests of the company." *Aronson v. Lewis*, 473 A.2d 805, 812

(Del. 1984). In order to rebut this presumption, a person challenging a board action must show

that the directors breached their fiduciary duties. *Brehm v. Eisner (In re Walt Disney Co.*

*Derivative Litig.)*, 906 A.2d 27, 52 (Del. 2006). If a plaintiff fails to rebut the presumption, then

the plaintiff may still recover through a waste claim. *Id.* at 73–74. In order to make out a claim, the plaintiff must prove "that the exchange was 'so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration.'" *Id.* at 74 (quoting *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000)). This onerous standard is imposed because, under Delaware law, "where business judgment presumptions are applicable, the board's decision will be upheld unless it cannot be 'attributed to any rational business purpose.'" *Id.* (quoting *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971)).

In Virginia, the standard of conduct for directors is set out in Va. Code Ann. § 13.1-690. That standard requires a director to discharge his duties "in accordance with his good faith business judgment of the best interests of the corporation." Va. Code Ann. § 13.1-690(A). The Virginia Supreme Court has stated that this subsection, while not abrogating the common law duties of a director, "sets the standard by which a director is to discharge those duties." *Willard v. Moneta Bldg. Supply, Inc.*, 258 Va. 140, 151, 515 S.E.2d 277, 284 (1999). The court has also concluded that a director's performance "is not measured by what a reasonable person would do in similar circumstances *or by the rationality of the ultimate decision*." *Id.* (emphasis added). The statute further states that "[a] director is not liable for any action taken as a director, or any failure to take any action, if he performed the duties of his office in compliance with this section." Va Code Ann. § 13.1-690(C). This statutory protection is confined to a director's acts taken in his capacity as a director and "to the exercise of business judgment on behalf of the corporation." *Simmons v. Miller*, 261 Va. 561, 577, 544 S.E.2d 666, 676 (2001). It is also only available, by its terms, to directors. *Id.* at 577 n.3, 544 S.E.2d at 676 n.3.

Given the protections found § 13.1-690(C) and the policy of not reviewing the rationality of a business decision codified in § 13.1-690(A), it seems doubtful to this Court that a Virginia court would recognize a common law cause of action seeking to impose personal liability on a director for wasting his or her corporation's assets without a showing that the director breached a fiduciary duty in so doing. However, the rationale used by the court in *Schnelling* to allow a claim of waste against directors to survive a motion to dismiss would suggest that such a claim could be brought against corporate officers as well. *See* 360 B.R. at 175–76 ("A director or officer who intentionally or negligently facilitates the waste or mismanagement of corporate assets is liable for damages to the principal that flow from his conduct." (quoting *Pereira v. Centel Corp. (In re Argo Commc'ns Corp.)*, 134 B.R. 776, 789 (Bankr. S.D.N.Y. 1991))). Because § 13.1-690(C) applies only to the acts of a director, whether a Virginia court would recognize a cause of action for corporate waste against a corporation's officers is more of an open question.

Furthermore, in seeking to define the precise nature of Mason's fiduciary duties to the Debtor, it may be appropriate to weigh in the balance the Trustee's allegation that Mason was a majority owner of LTA, which raises the issue of conflict of interest, which is the subject addressed by § 13.1-691 of the Code of Virginia. Although this statute appears to be directed to the question of the voidability of a corporate action approved by its board of directors as distinct from the issue of director personal liability, it does set forth rules of the game to be observed when directors' particular personal financial interests are at stake. In such a situation, there may be a necessity to demonstrate that the transaction was "fair" to the Debtor, *see* Va. Code Ann. § 13.1-691(A)(3), and the burden of proof may be shifted to the director wishing to claim the

benefit of the business judgment rule. *See Izadpanah v. Boeing Joint Venture*, 243 Va. 81, 83,

412 S.E.2d 708, 709 (1992). Lastly, any protection provided by § 13.1-690 is solely applicable

to a claim against Mason as a director, not in his capacity as an officer. *See Simmons*, 261 Va. at

577 n.3, 544 S.E.2d at 676 n.3.

Under these circumstances, the term "corporate waste" might be considered

shorthand for a claim against Mason for directing or authorizing a series of transfers constituting

a reckless dissipation of the Debtor's funds even though he might contend that his actions were

taken in good faith. This Court is not prepared to rule at this stage that Virginia courts would not

impose liability in such a situation where the transfers in question were for the benefit of an

entity in which Mason, as president and one of the directors of the Debtor, had a substantial

personal financial stake. While this Court has some substantial doubt about the existence under

Virginia law of "corporate waste" as a cause of action against a board of directors with regard to

some action taken or failure to act which comes within the protection of Va. Code Ann. § 13.1-

690(C), a claim against an individual who is the president and a majority owner of an insolvent

corporation and in control of it for allegedly approving grossly one-sided transactions with

another corporation of which he is also majority owner is really a very different question. It

concludes that such a ruling about Virginia law is better made after the evidence is in and the

precise nature of what Mason did and what he knew is ascertainable. As to the assertion of a

cause of action for corporate waste against LTA, however, the Court sees no reason to delay a

final ruling. It has not been cited to any authority applying such doctrine against a separate

corporation and is not aware itself of any such authority. The Motion to Dismiss will be granted

as to LTA.

The foregoing discussion has been directed to a review of whether Virginia law would recognize a cause of action for corporate waste under the circumstances presented in this case as opposed to whether such a claim has been sufficiently pled. The Court agrees with the Defendants that such has not been done here under the *Twombly* and *Iqbal* pleading standard. The language characterizing the disparity in value between the sums transferred to LTA and the value of the services it provided to the Debtor appears to be simply a recital of one of the elements of the cause of action from relevant case authority detailing the elements of the cause of action under Delaware law. *See Brehm*, 906 A.2d at 74. There are no underlying specific factual allegations about that supposed value disparity which would give credence to this claim. For example, there is no allegation such as that at most the value of the services provided by LTA to the Debtor over the two year period preceding the bankruptcy filing was only $XXXX but that the aggregate amount paid for such services was $YYYY, a multiple of more than Z times their fair value. Without underlying specific allegations of that kind to support this count, the Court is left with the impression that the Trustee in drafting her Complaint has gone through a checklist of possible causes of action for litigation of this kind and has asserted all of them which arguably might have some relevance to the relief she is seeking. Accordingly, as to this issue the Motion to Dismiss will be granted to the entire count with leave granted to the Trustee to plead over.

<u>Count XIII and XIV:  Objection to Claims and Equitable Subordination</u>

The Defendants ask for the entire Complaint to be dismissed, but the Motion does not cite any legal authority or set forth any reason for these counts to be dismissed. The Court

will not undertake its own search to find a rationale upon which to consider the Motion.  The

Motion to Dismiss will therefore be denied as to these counts.

CONCLUSION

Based on the foregoing, the Court will grant Defendants' Motion as to Counts I,

III, V, VIII, IX, X, and XII.  The Motion is also granted as to the alternative allegations that

Debtor was left with unreasonably small capital or intended to incur debts beyond its ability to

pay in Count II and the conversion cause of action in Count XI, but the Motion is denied as to

the remainder of Counts II and XI.  The Motion will be denied as to Counts IV, VI, VII, XIII,

and XIV.

An Order embodying the Court's Decision will be entered contemporaneously

herewith.

DECIDED this 29th day of October, 2010.

_____
UNITED STATES BANKRUPTCY JUDGE